IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| DEBRA L. CREWS-CLINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-CV-00723-NKL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Debra Crews-Cline seeks review of the Administrative Law Judge's decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* [Doc. 6]. Crews-Cline's alleged disability onset date is July 10, 2007. For the following reasons, the decision of the Administrative Law Judge (ALJ) is REVERSED, and the case is remanded for further consideration.

**I.  Background**

In October 2005, after several trips to the emergency room for complaints of severe abdominal pain, Crews-Cline underwent a sigmoid colon resection after developing signs of ischemic colitis. [TR-265]. From 2005 to 2010, Crews-Cline made several trips to the emergency room and to her primary care physician complaining of abdominal pain and bloody stools. *See e.g.*, [TR-270-71, 273, 275, 283, 309, 322, 346,

1

348, 460-61, 468, 531, 539]. From 2005-2011, Crews-Cline also periodically complained of back pain and other orthopedic ailments.

In August 2011, Dr. John Bleazard, D.O., performed an orthopedic examination on Crews-Cline at the request of Missouri Disability Determinations. [TR-849]. In addition to filling out a Medical Source Statement, which required him to check boxes indicating Crews-Cline's capacity to perform certain tasks, [TR-854-59], Dr. Bleazard included a thorough and specific narrative discussion of his findings. [TR-849-53]. For instance, though Dr. Bleazard marked in the Medical Source Statement that Crews-Cline could occasionally lift 21 to 50 pounds and frequently lift 11 to 20 pounds, [TR-854], he clarified in his narrative report that "lifting should be restricted to 30 pounds occasionally." [TR-852]. Likewise, while in the Medical Source Statement he checked the box indicating Crews-Cline could occasionally carry 21 to 50 pounds and frequently carry 11 to 20 pounds, [TR-854], he clarified in his narrative that Crews-Cline should be limited to carrying 15 pounds occasionally and 5 pounds frequently. [TR-852]. Dr. Bleazard also remarked that Crews-Cline's "primary medical problem are [sic] complications to ischemic colitis. While she may have the above mentioned orthopedic complaints, I believe her major issues are due to her complicated medical history including significant ischemic colitis which has a significant impact on her work capabilities on a consistent basis." [TR-852].

After a hearing, the ALJ issued an unfavorable decision, finding that Crews-Cline retained the ability to perform past relevant work as a collection's clerk, book keeper, and accounts payable clerk. [TR-27]. The ALJ concluded that Crews-Cline could perform the

work as it was actually performed by her. *Id.* Crews-Cline had the following severe impairments: ischemic colitis, bilateral knee pain, and low back pain. [TR-23]. Crews-Cline had the Residual Functional Capacity (RFC) to perform medium work. However, she was permitted to lift up to fifty pounds occasionally, up to twenty pounds frequently, and up to ten pounds continuously. She could sit three hours total in an eight our day and stand and walk two hours at one time for up to three hours total. She could frequently reach, handle, finger, feel, push, pull, and use foot controls. She could occasionally climb stairs and ramps, but never climb ladders or scaffolds. She could never balance, stoop, kneel, crouch, or crawl. She could never be exposed to unprotected heights, extreme heat or cold, or vibrations. She could occasionally be exposed to moving mechanical parts, humidity, wetness, dust, odors, fumes, and pulmonary irritants. She could occasionally operate a motor vehicle. [TR-24].

In coming to her conclusion that Crews-Cline was not disabled, the ALJ relied on the Medical Source Statement portion of Dr. Bleazard's opinion, which she found to be consistent with the medical record. [TR-26]. Dr. Bleazard was given "great weight" because his opinion was "well-supported by a thorough examination and report and is consistent with the remainder of the record." [TR-27]. The limitations in the Medical Source Statement were adopted as the RFC. *Id.* The Medical Source Statement filled out by Dr. Bleazard was provided to a vocational expert who used it to determine that Crews-Cline could perform past relevant work. [TR-48]. There is no mention of Dr. Bleazard's narrative in the ALJ's opinion and no indication that the narrative was considered by the vocational expert during the hearing.

## II. Discussion

### A. RFC Determination and Dr. Bleazard's Opinion

Crews-Cline argues that the ALJ erred when she gave Dr. Bleazard's opinion "great weight" and stated that the RFC was based on his opinions, but then failed to include some of the limitations imposed by Dr. Bleazard, particularly in his narrative.

While an ALJ is not required to base her RFC determination entirely on the opinion of one medical source, the ALJ must explain why a medical opinion was not adopted if it conflicts with the RFC. SSR 96-8P, at *7. Having adopted Dr. Bleazard's opinions as the basis for her RFC determination and affording his opinion alone "great weight," the ALJ offers no explanation as to why only certain limitations are incorporated in the RFC while others are not. For example, in his narrative, Dr. Bleazard opined that Crews-Cline should be limited to carrying 15 pounds occasionally and 5 pounds frequently and should be limited to lifting 30 pounds occasionally. However, the ALJ concluded that Crews-Cline had the RFC to carry and lift 50 pounds occasionally and 20 pounds frequently. Had the ALJ developed the RFC consistent with Dr. Bleazard's specific narrative opinions, she would not have found that Crews-Cline was capable of performing medium work, which requires the ability to lift and carry 50 pounds occasionally and 25 pounds frequently. 20 C.F.R. § 404.1567(c). Dr. Bleazard also opined that Crews-Cline had "significant ischemic colitis which has a significant impact on her work capabilities on a consistent basis." [TR-852]. Despite Dr. Bleazard's opinion and the ALJ's own finding that Crews-Cline's ischemic colitis was a severe impairment, there is no discussion in the ALJ's decision as to how Crews-Cline's RFC is affected, if

4

at all, by her ischemic colitis. Dr. Bleazard also opined that Crews-Cline would need the option for "periodic alternating between sitting/standing for pain relief." This limitation is also absent from the RFC or the ALJ's discussion. *See* SSR 83-12, at *4 ("In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. . . . Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work.").

While the ALJ could have relied on other evidence, the ALJ stated that the RFC was based on Dr. Bleazard's opinion but then failed to explain why parts of the RFC were inconsistent with it. This is reversible error. On remand, the ALJ should either formulate an RFC consistent with Dr. Bleazard's entire opinion, including his narrative, or explain why certain parts of the RFC are inconsistent with Dr. Bleazard's opinion and how the RFC is otherwise supported by substantial evidence in the record.

**B. Determination that Crews-Cline Could Perform Past Relevant Work**

Crews-Cline also argues the ALJ erred when she determined that Crews-Cline could perform her past relevant work as it was performed by her. When determining if a claimant can perform past relevant work, an ALJ is required to make "explicit findings" regarding the physical and mental demands of the claimant's past work, and to compare those demands with her RFC to determine whether she could perform the relevant duties. *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). The ALJ made no such finding. Despite finding that she had the RFC to sit up to six hours in an eight hour workday, the

ALJ determined that Crews-Cline could perform her past relevant work, which required her to sit seven hours in an eight hour workday. [TR-158-171]. The Commissioner argues that the ALJ's determination is supported by substantial evidence because a vocational expert testified that Crews-Cline could perform past relevant work. However, the ALJ only gave the vocational expert the Medical Source Statement filled out by Dr. Bleazard and not the accompanying narrative which clarified that Crews-Cline would have further lifting restrictions, would need to alternate between sitting and standing, and would be significantly affected by ischemic colitis.

The ALJ's conclusion that Crews-Cline can perform her past relevant work is not supported by substantial evidence in the record, and the ALJ's reliance on the vocational expert's testimony is flawed in light of the fact that the ALJ did not provide the vocational expert with Dr. Bleazard's full report. On remand, the ALJ is ordered to make "explicit findings" regarding the physical and mental demands of Crews-Cline's past work, and to compare those demands with her RFC. If the ALJ cannot find evidence in the record to explain why some of Dr. Bleazard's limitations should be disregarded, the ALJ must reformulate the RFC and make explicit findings regarding Crews-Cline's past work and her more limited RFC.

**C. Standard of Proof**

Crews-Cline also argues the ALJ erred by requiring her to meet a "preponderance of the evidence" standard instead of a "substantial evidence" standard. However, the ALJ's opinion does not say that Crews-Cline must prove her case by a preponderance of the evidence. Rather, the ALJ states that her RFC determination is supported by a

preponderance of the objective and subjective evidence. [TR-27]. Regardless of whether the ALJ is required to make an RFC determination that is supported by a preponderance of the evidence, there is no indication Crews-Cline was held to that standard.

### D. Failure to Consider Effects of Non-Severe Depression on RFC

Crews-Cline contends the ALJ also erred by failing to include in her RFC limitations caused by her non-severe depression. She also argues the ALJ should have factored into the RFC determination the ALJ's own finding that Crews-Cline had mild difficulties maintaining social functioning and concentration, persistence, or pace. However, there is scant evidence of depression in the record. Crews-Cline reported depression related to a traumatic divorce in January 2007. [TR-276]. Despite no other indication of treatment for depression, her treating physician submitted two letters stating that she suffered from generalized anxiety disorder, sleep disorder, and severe depression. [TR-291-92]. In November 2011, Dr. Prouty-Moore, M.D., stated in a RFC form that Crews-Cline suffered from depression, [TR-864], but did not explain the extent or effect of the depression. There is no objective evidence suggesting Crews-Cline's ability to work is affected by her depression, and Crews-Cline has not argued how the RFC should have differed to account for her depression. Crews-Cline also argues that evidence of depression is scant because she could not afford treatment. However, the record is full of visits to the emergency room and to her treating physician, and other than the records cited above, there is no complaint of depression despite multiple opportunities to do so.

### E. Exaggeration and Mischaracterization of Evidence in Credibility Analysis

Crews-Cline also argues the ALJ exaggerated and mischaracterized Crews-Cline's testimony and used it against her in the ALJ's credibility analysis. Crews-Cline contends that the ALJ mischaracterized testimony about how often she was bedridden and how often she cried. In her opinion, the ALJ stated that Crews-Cline "testified she has crying spells almost daily that can last up to one hour" and "reported being bed-ridden one week of every month." [TR-26]. At her hearing, Crews-Cline testified that she cried "every, probably every other day" "for just a few minutes . . . [or] for hours." [TR-41]. She also testified that she was bedridden "like once every other month" "for at least a week." [TR-38]. While the ALJ's recollection is not exact, it is similar, and Crews-Cline has failed to show how the minor distinctions affect the outcome of the ALJ's credibility determination.

Crews-Cline also argues that the ALJ erred when she concluded that Crews-Cline's treating sources found her complaints to be inconsistent. First, Crews-Cline argues that the ALJ cited to exhibits 4F and 7F. The ALJ actually cited to 8F and 7F. [TR-26]. Both 8F and 7F support the ALJ's conclusion that doctors noted inconsistencies between Crews-Cline's complaints and their findings. In Exhibit 8F/7, [TR-327], Dr. Woody states that he examined her abdomen three times. The first and third time he examined her, he was asking her questions about her family, and her abdomen was soft and benign. *See also* [TR-324]. The second time, he asked her about pain, and she winced in pain as he touched her. In Exhibit 7F/4, Crews-Cline's treating physician expressed difficulty believing her complaints. [TR-309]. The ALJ did not exaggerate or

8

mischaracterize evidence in making her credibility determination. The ALJ's credibility finding is supported by substantial evidence in the record.

## III. Conclusion

For the reasons set forth above, the ALJ's decision is REVERSED, and the case is remanded for further consideration. On remand, the ALJ should either formulate an RFC consistent with Dr. Bleazard's entire opinion, including his narrative, or explain why certain parts of the RFC are inconsistent with Dr. Bleazard's opinion and how the RFC is otherwise supported by substantial evidence in the record. The ALJ should address Dr. Bleazard's opinions about Crews-Cline's lift and carry capacity, her need for a sit/stand option, and her ischemic colitis. The ALJ is also required to make "explicit findings" regarding the physical and mental demands of Crews-Cline's past work, and to compare those demands with her RFC. If the ALJ cannot find evidence in the record to explain why some of Dr. Bleazard's limitations should be disregarded, the ALJ must reformulate the RFC and make explicit findings regarding Crews-Cline's past work and her more limited RFC.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: June 23, 2014  
Jefferson City, Missouri